RECEIVED
IN LAKE CHARLES, LA

SEP 27 2010

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| JOSEPH L. GUILLORY, JR. | : | DOCKET NO. 09-CV-1717 |
| VS. | : | JUDGE MINALDI |
| SCHWAN'S HOME SERVICE, INC. | : | MAGISTRATE JUDGE KAY |

## REPORT AND RECOMMENDATION

Before the court is plaintiff's Motion to Remand, which includes a request for attorney fees, filed by Joseph L. Guillory, Jr. [1]  The motion is opposed by the removing defendant, Schwan's Home Service, Inc. (hereinafter "Schwan's"). After considering plaintiff's motion and memorandum in support, Schwan's memorandum in opposition,[2] plaintiff's reply,[3] argument of counsel, and post-argument memoranda,[4] this court has determined that the motion to remand should be DENIED.

## BACKGROUND

On June 5, 2009, plaintiff filed suit in the Fourteenth Judicial District Court, Calcasieu Parish, Louisiana, against his former employer, Schwan's, alleging breach of his employment contract.  The petition alleged that plaintiff was undercompensated for his 2008 employee incentive pay in an amount of $38,231.19.[5]  Plaintiff sought damages for "unpaid wages,

---

[1] Doc. 4.
[2] Doc. 7.
[3] Doc. 10.
[4] Docs. 15, 16.
[5] Plaintiff alleges his total employee incentive pay for 2008 was $54,616.00 but that he received a check from Schwan's only for $16,384.81, leaving a balance due of $38,231.19.  Doc. 1, Att. 2, Ex. A, p. 3, ¶¶ 12, 15,17.

-1-

penalties wages and reasonable attorney's fees from Schwan's for its violations of the Louisiana Wage Payment Act, La. R.S. 23:631, et. seq. (LWPA).[6]

Schwan's was served with the state court petition on June 17, 2009.[7]  On July 13, 2009, Schwan's answered and asserted a reconventional demand seeking return of the $16,384.81 incentive payment made to plaintiff claiming that payment to have been made in error as plaintiff "was not an employee in good standing" when the payment was made.[8]  Plaintiff denied the allegations of the reconventional demand and claiming the payment was an "unconditional partial tender of the full amount owed to him."[9]

On September 11, 2009, plaintiff sent a settlement proposal letter to Schwan's demanding an amount exceeding $75,000.[10]  On October 1, 2009, Schwan's filed its Notice of Removal on the basis of diversity jurisdiction and claiming it was not until it received the settlement letter that it was apparent that the amount in controversy exceeded $75,000.[11]

On October 22, 2009, plaintiff filed the instant motion to remand on the basis that the removal was filed untimely.  Plaintiff contends that (1) the original petition on its face revealed that the amount in controversy was greater than $75,000 and, alternatively, (2) the petition together with the reconventional demand and/or the answer to the reconventional demand were a clear indication that the case was removable.  In either event, plaintiff suggests, removal was not timely.  Thus while plaintiff does not suggest diversity jurisdiction is absent, he does submit that removal was procedurally defective.

---

[6] Doc. 1, Att. 2, Ex. A, p. 4, ¶21.
[7] Doc. 1, Att. 2, Ex. A, p. 9.
[8] Doc.1, Att. 2, Ex. A,  p.17, ¶¶ 11-12.
[9] Doc.1, Att. 2, Ex. A, p. 44, ¶11.
[10] Doc. 2, Ex. B.
[11] The parties do not dispute that diversity of citizenship exists.  Neither do the parties now contest that the amount in controversy exceeds $75,000.

## LAW AND ANALYSIS

The time within which a matter must be removed is governed by 28 U.S.C. § 1446

outlines the time periods governing removal of actions and provides, in pertinent part:

> (b)   The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based . . . .
>
> If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order *or other paper* from which it may first be ascertained that the case is one which is or has become removable . . . .

Emphasis added.

In *Chapman v. Powermatic, Inc.,* 969 F.2d 160 (5th Cir. 1992) provided an analysis

involving the timeliness of removal when relying on the "other paper" provision of Section 1446.

In *Chapman,* the court discussed the following two-part test:

> In essence, when read as a whole, § 1446(b) provides a two-step test for determining whether a defendant timely removed a case. The first paragraph provides that if the case stated by the initial pleading is removable, then notice of removal must be filed within thirty days from the receipt of the initial pleading by the defendant; and the second paragraph provides, if the case stated by the initial pleading is not removable, then notice of removal must be filed within thirty days from the receipt of an amended pleading, motion, order, or other paper from which the defendant can ascertain that the case is removable.

*Id.* at 161.

In *Chapman* the original pleading filed by plaintiff alleged various causes of action but

did not state a claim for the amount of damages plaintiff was seeking.  After defendant received

answers to interrogatories that clearly indicated plaintiff was seeking damages in an amount that

-3-

exceeded the requirements for federal diversity jurisdiction, defendant removed.  Plaintiff moved to remand claiming the removal was untimely.

Despite defendant's admission that it had actual knowledge that plaintiff was seeking more than the jurisdictional amount when the petition was filed, the court nevertheless determined the thirty-day period for removal did not begin to run until the plaintiff responded to the discovery.  In so holding, the court said:

> [F]or the purposes of the first paragraph of § 1446(b), the thirty day time period in which a defendant must remove a case starts to run from defendant's receipt of the initial pleading only when that pleading affirmatively reveals on its face that the plaintiff is seeking damages in excess of the minimum jurisdictional amount of the federal court.  We adopt this rule because we conclude that it promotes certainty and judicial efficiency by not requiring courts to inquire into what a particular defendant may or may not subjectively know.

*Id.* at 163.  The court rejected the argument of the plaintiff that his initial complaint imposed upon defendants an obligation of "due diligence" which, according to plaintiff, would have shown that the amount in controversy exceeded the jurisdictional requirements.  The Fifth Circuit chose to adopt this position as "it promotes certainty and judicial efficiency by not requiring courts to inquire into what a particular defendant may or may not subjectively know." *Id.*

Ten years later the Fifth Circuit reaffirmed and further honed the *Chapman* rule.  In *Bosky v. Kroger Texas LP*, 288 F.3d 208 (5th Cir. 2002), the court noted that, since *Chapman*, it has held that "specific damage estimates that are less than the minimum jurisdictional amount, when combined with other unspecified damage claims, can provide sufficient notice that an action is removable so as to trigger the time limit for filing a notice of removal."  *Id.* at 211, citing *Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 298 (5th Cir.1999); *De Aguilar v. Boeing*

-4-

*Co.,* 47 F.3d 1404, 1408- 12 (5th Cir.1995); *Marcel v. Pool Co.,* 5 F.3d 81, 82-85 (5th Cir.1993). After noting this development of the *Chapman* rule, the court went further to hold that, when relying on the second paragraph of § 1446(b) to establish timeliness of removal, "the information supporting removal in a copy of an amended pleading, motion, order or other paper must be 'unequivocally clear and certain' to start the time limit running for a notice of removal under the second paragraph of section 1446(b)." *Id.* The court concluded this point by noting:

> This clearer threshold promotes judicial economy. It should reduce "protective" removals by defendants faced with an equivocal record. It should also discourage removals before their factual basis can be proven by a preponderance of the evidence through a simple and short statement of the facts. In short, a bright-line rule should create a fairer environment for plaintiffs and defendants.

*Id.*

Plaintiff, citing the case of *Wise v. Bayer A.G.,* 281 F. Supp.2d 878 (W.D.La. 2003), contends that his original pleading was "sufficiently definite" on its face to enable Schwan's to ascertain removability.  Thus, he argues that Schwan's removal is untimely because it should have removed within 30 days of service of the initial pleading.[12]

In *Wise,* the court found that defendants failed to timely effect removal where plaintiff's original petition, even though it alleged damages in an amount less than the federal jurisdictional amount ($50,000), but which alleged in the same document that plaintiff suffered "severe injuries and damages including pain, emotional distress, mental anguish, loss of earning capacity, substantial medical bills for the remainder of his life, expert witness fees, and attorney's fees as a result of ingesting the drug Baycol" was sufficient to enable defendant to ascertain removability. *Id.* at 884-85. The court found that defendants possessed sufficient information, not just from the

_____

[12] Doc. 4, Att. 1, pp. 10-12.

-5-

original petition but from information available to them from other means, which established that the amount in controversy exceeded the federal jurisdictional amount.[13] *Id.* at 884.

Plaintiff's original petition in this case alleges damages in the dollar amount of $38,231.19 plus penalty wages and attorney fees for violation of the Louisiana Wage Payment Act. La. R.S. 23:631, *et seq.*[14]  Plaintiff contends that Schwan's should have been able to ascertain that the case was removable because as plaintiff's employer, it possessed "key information" needed to calculate that the principle demand combined with the penalties and attorney's fees would reach the required jurisdictional amount.[15]  Plaintiff asserts that Schwan's knew plaintiff's annual base pay and could easily calculate the 90 day penalty wages. He further asserts that Schwan's ignored or failed to consider a calculation of attorney fees which would have increased its calculation of the amount in controversy.

In its opposition to remand, Schwan's asserts that at the time the original petition was filed it was not facially apparent that amount in controversy was met.  Although penalty wages and attorney's fees were pled in the petition, Schwan's argues that plaintiff failed to articulate any specific amount and it was not clear how these awards were to be calculated.[16].  Schwan's relies on the case of *Nelson v. Wal-Mart Stores, Inc.,* 2009 WL 1098905 *5 (W.D.La.), which reiterates the standard enunciated in *Chapman* that "a state court complaint [must] be sufficiently definite on its face to enable defendants to ascertain removability without reliance on speculation

---

[13] The court noted that defendants were aware of other litigation involving the ingestion of Baycol in which the allegations of physical injuries in those petitions, which were similar to plaintiff's, were sufficient to meet the dollar amount for federal jurisdiction. *Wise,* at 885, n. 25.
[14] LSA – R.S. 23: 631 provides, in part: "Any employer who fails ...to comply with the provisions of R.S. 23:631 shall be liable to the employee ... for ninety days wages at the employee's daily rate of pay .... Reasonable attorney fees shall be allowed the laborer or employee by the court ..."
[15] Doc. 10, p.3.
[16] The parties dispute whether an employee's "daily rate of pay" under R.S. 23:631 would be based upon an employee's base salary or whether it would include incentive pay such as that previously received by plaintiff from his former employer.  The difference is large ($52,000 base pay, $106,616 base pay plus incentive pay) and the resultant discrepancy in what penalty wage claim would be would be similarly large.

-6-

or conjecture."  Schwan's maintains that it would have been speculative for it to remove to federal court based solely on the facts pled in the original petition.

Despite plaintiff's contentions and his reliance on *Wise*, this court finds that the original state court petition did not reveal on its face that the he was seeking damages in excess of the minimum jurisdictional amount of the federal court.  The petition here contained neither an allegation that the damages exceed the federal jurisdictional minimum nor any specified amount of loss.  The claims for penalty wages and attorney fees, while necessarily included in the calculation for jurisdictional amount, are far from certain or ascertainable from the facts alleged and do not meet the "facially apparent" standard.

The result of our finding that the original petition was not sufficiently is that paragraph one of Section 1446(b) does not apply.  Having reached this conclusion, then we must turn to what "amended pleading, motion, order, or other paper" from the second paragraph of Section 1446(b) began the running of the thirty-day delay for removal.

In its motion to remand, plaintiff asserts, without any supporting authority, that Schwan's reconventional demand for return of the $16,384.81 payment made to plaintiff along with plaintiff's answer to the reconventional demand denying that the payment was made in error increased the basic wage element in dispute to $54,616.  Plaintiff argues that the $54,616 plus penalty wages and attorney fees place the amount in controversy above the $75,000 jurisdictional limit.  It is plaintiff's position that the answer to the reconventional demand was "other paper" that gave Schwan's notice of changed circumstances supporting federal jurisdiction and that defendant should have removed within thirty days from the date of service of that answer.

-7-

In reply, Schwan's contends that the federal courts are split on the issue of whether the value of compulsory counterclaims may be considered in computing jurisdictional amount.[17] Based on the unsettled nature of the law, Schwan's argues that it had a reasonable basis for not filing its removal at the time the answer to the reconventional demand was served.

For a document to be considered "other paper" it must result from "the voluntary act of plaintiff which gives the defendant notice of the changed circumstances which now support federal jurisdiction." *Addo v.Globe Life and Acc. Ins. Co.*, 230 F.3d 759, 762 (5th Cir. 2000), citing *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 494 (5th Cir. 1996). The reconventional demand asserted by a defendant could not be considered a "voluntary act of plaintiff" and we find no jurisprudential authority for either adding the amount asserted in that claim to plaintiff's claim for purposes of determining amount in controversy. The "other paper" which was indisputably a voluntary act of plaintiff that was clear and unambiguous about the amount in controversy was the September 11, 2009, settlement proposal letter sent by him to Schwan's demanding an amount exceeding $75,000.[18] Insofar as defendant removed within thirty days of receipt of that letter, this removal was timely.

## CONCLUSION

For the foregoing reasons, we find that the removal was timely and proper under 28 U.S.C. 1446 and for these reasons deny plaintiff's motion to remand and motion for attorney fees.

---

[17] Doc. 7, p. 9. Schwan's cites *Gulf-South Piling & Construction, Inc. v. Taylor Bros., Inc.*,1997 WL 332410 (E.D. La. 1997) (court refuses to look to counterclaim in determining amount in controversy), and *Thrash v. New England Mut. Life Ins. Co.*, 534 F.Supp.2d 691 (S.D. Miss 2008)(refusing to aggregate amount in complaint with counterclaim that was filed after the case had been removed). See also, *Royal Cosmopolitan, LLC v. Star Real Estate Group, LLC*, 629 F.Supp 2d 594 (La. E.D. 2008) for a discussion of this circuit's view on the use of counterclaims to calculate the amount in controversy.
[18] Doc. 2, Ex. B.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) business days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.**

THUS DONE AND SIGNED, in Chambers, at Lake Charles, Louisiana, this 27th day of September, 2010.

KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE